UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

HENRY HOBSON,

                Plaintiff,

      - against -

BRIAN FISCHER, Commissioner of N.Y.S.
D.O.C.S, in his official and individual
capacity, and PHILLIP HEATH,
Superintendent, Sing Sing Correctional
Facility, in his individual and official
capacity,

              Defendants.
————————————————————————X

**OPINION AND ORDER**

**10 Civ. 5512 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Henry Hobson ("Hobson" or "Plaintiff"), proceeding *pro se*, filed the instant action pursuant to section 1983, Title 42 of the United States Code ("section 1983").  Named as defendants are Commissioner Brian Fischer ("Fischer") and Superintendent Phillip Heath ("Heath" or "Superintendent"), officials in the New York State Department of Correctional Services ("DOCS"), both in their official and individual capacities (collectively "Defendants"). Hobson's Complaint alleges Constitutional violations resulting from his exposure to hazardous environmental conditions at Sing Sing Correctional Facility ("Sing

Sing"), where plaintiff is an inmate.  He seeks damages of $100,000, in addition to twenty-five dollars per day for each uncorrected violation commencing July 1, 2009, as well as an order requiring defendants to remedy the hazardous conditions.

Defendants now move to dismiss the Complaint on the following grounds: (1) plaintiff fails to state a facially plausible claim against defendants; (2) plaintiff fails to allege an identifiable injury; (3) plaintiff fails to allege personal involvement on the part of Fischer; and (4) defendants are protected from suit by qualified immunity.  For the reasons stated below, defendants' motion is granted in its entirety and plaintiff's Complaint is dismissed with prejudice, and without leave to file an amended complaint.

## II.    BACKGROUND[1]

### A.    First Complaint to the Inmate Grievance Committee

Hobson alleges that he has been  exposed to unhealthy environmental conditions at Sing Sing since his incarceration on August 15, 2007.[2]  On July 1, 2009, plaintiff filed grievance # 46509 with the Inmate Grievance Resolution

---

[1]    The following facts are drawn from the Complaint ("Compl.") and are presumed to be true for the purpose of this motion.

[2]    *See* Compl. at 2.

Committee ("IGRC").[3]   In his grievance to the IGRC, Hobson complained that the mess hall fans were unsanitary because  they blew "food, dust, [and] spittle into each others food trays."[4]   In addition, Hobson stated the following; the ventilation in the cells was unsatisfactory and there were no working exhaust fans in the cell blocks, which caused inmates to breathe in bird feces and dust; because there were no screens in the windows, contaminated air entered the cells; and the barber shop should have an exhaust system in place, rather than fans which can cause respiratory ailments.[5]   According to Hobson, because of these violations, the facility "could not lawfully pass any inspection or be certified."[6]   Hobson requested that each violation be remedied, and that he be given twenty-five dollars a day for each day the violations were not removed.[7]

On August 4, 2009, the IGRC denied Hobson's grievance, advising him that monetary compensation for facility violations was "beyond the purview of

---

[3]     *See id.* at 1-2, 8.  Plaintiff included an illegible copy of the July 1, 2009 grievance in his Complaint at page 8.  Defendants obtained a legible copy of this grievance from DOCS ("Grievance # 46409"), which they attached to their motion to dismiss, Ex. A at 15.

[4]     Grievance # 46409.

[5]     *See id.*

[6]     *Id.*

[7]     *See id.*

the committee" and that he should seek assistance from the Inmate Liaison Committee for corrective actions concerning the alleged violations.[8]

Hobson appealed the IGRC decision to Superintendent Heath, who denied the grievance on September 9, 2009.[9]  The Superintendent's decision stated that the mess hall was operating in full compliance with department regulations.[10] It further stated that the bird droppings were cleaned by porters on a daily basis and that the fans in the barber shop were used for exhaust purposes only.[11]

On the same day that Hobson's grievance was denied by the Superintendent, he appealed the decision to the Central Office Review Committee ("CORC").[12]   On December 9, 2009, CORC issued its ruling, finding that Hobson's request was "accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated."[13]  CORC noted that the

---

[8]    *See* IGRC Response to Grievance # 46409-09, attached to the Complaint at 14.

[9]    *See* Decision of the Superintendent on Grievance # 46409-09 ("Decision of Superintendent"), attached to the Compl. at 12.

[10]    *See id.*

[11]    *See id.*

[12]    *See id.*

[13]    CORC response to Grievance # 46409-09 ("CORC Response"), attached to the Complaint at 9.

-4-

facility took action to replace the screens and to clean the bird droppings, as needed.[14] CORC stated that it had not been previously notified of problems with the fans or ventilation systems and that Hobson should address immediate concerns with the area staff.[15]

**B.      Second Complaint to the Inmate Grievance Committee**

On December 21, 2009, Hobson filed a second grievance, Grievance 47122-09, with the IGRC.[16] This grievance complained of the lack of locking mechanisms on the bath house windows.[17] Hobson argued that the open windows posed "a health risk for colds, flu" and that he had "brought this to the attention of area supervisors who indicated that they'd tried to have maintenance fix them in the past."[18] Hobson requested that new locks be installed so as to prevent drafts from entering the bath house which posed health risks to the inmates.[19]

On December 29, 2009, the IGRC responded to Hobson's grievance, stating that "per investigation, attempt to repair windows in question were made,

---

[14]      *See id.*

[15]      *See id.*

[16]      *See* Grievance # 47122-09, attached to the Compaint at 11.

[17]      *See id.*

[18]      *Id.*

[19]      *See id.*

however . . . it appears that the repair in question did not meets its intend[sic] goal, therefore further repair is needed."[20]   On January 11, 2010, Hobson checked the box on the IGRC response, indicating that he wished to appeal to the Superintendent.[21]   There is no further documentation attached to the Complaint concerning Hobson's appeal of this grievance to the Superintendent.[22]

### C.   The Instant Complaint

Hobson filed his Complaint on July 13, 2010 against Fischer and Heath, both in their individual and official capacities under section 1983.   He seeks remedies for the conditions previously complained of in his grievances. *First*, Hobson seeks the appointment of a special master to investigate and monitor the conditions in issue.   Additionally, he requests placement of screens on all

---

[20]   IGRC Response to Grievance # 47122-09, attached to the Complaint at 13.

[21]   *See id.*

[22]   Plaintiff's grievance appears not to have been fully exhausted as required by the The Prison Litigation Reform Act ("PLRA").   However, defendants failed to raise exhaustion as an affirmative defense.   Therefore, the defense is waived. *See Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) ("The failure to exhaust available administrative remedies is an affirmative defense. We have in the past instructed district courts, on remand, to consider whether defendants waived compliance with the exhaustion requirement by failing to raise it. At least two other circuits have explicitly held that the PLRA's exhaustion requirement may be waived.  We today join them and hold that this defense is waiveable.") (quotation marks and citations omitted).

windows, ventilation in the cells, and installation of exhaust fans in the cell blocks, barber shop and mess hall. Hobson also asks that the bath house windows be fixed and that any accreditation benefits given to the facility be rescinded.[23]   As noted, Hobson also seeks per diem damages for each uncorrected violation, commencing July 1, 2009.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6) - Failure to State a Claim

In deciding a Rule 12(b)(6) motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint"[24] and "draw all reasonable inferences in [the] plaintiff's favor."[25]   However, a court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[26]   To survive a motion to dismiss, the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

---

[23]      *See id.* at 5.

[24]      *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).   *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[25]      *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[26]      *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks and citation omitted).

that is plausible on its face.'"[27] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[29]

In deciding a 12(b)(6) motion, a court may not consider evidence offered by a party which is outside of the pleadings.  Rather, a court is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which a court may take judicial notice.[30]  Judicial notice may encompass the

---

[27]     *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.")).

[28]     *Id.*

[29]     *Id.* (quoting *Twombly*, 550 U.S. at 556).

[30]     *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999).

-8-

status of lawsuits in other courts and the substance of papers filed in those actions.[31]

In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[32]  A pleading that offers nothing but "labels and conclusions," "naked assertions" without "further factual enhancement," or a "formulaic recitation of the elements of action" will not suffice.[33]  This pleading requirement applies equally to *pro se* litigants.[34]  However, the submissions of a *pro se* litigant should be held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'"[35]  District courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they

---

[31]  *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 & nn.3 & 4 (2d Cir. 2000); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 238-39 & n.1 (S.D.N.Y. 2009) (taking judicial notice of Surrogate's Court and state Supreme Court findings and decisions).

[32]  *Twombly*, 550 U.S. at 555.

[33]  *Id.* at 557.

[34]  *See Arias-Mieses v. CSX Transp., Inc.*, 630 F. Supp. 2d 328, 331 (S.D.N.Y. 2009).

[35]  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

suggest.'"[36]  These same principles apply to briefs and opposition papers submitted

by *pro se* litigants.[37]

### B.   Section 1983

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . .[38]

Section 1983 "does not create a federal right or benefit;  it simply provides a

mechanism for enforcing a right or benefit established elsewhere."[39]  "The purpose

of [section]1983 is to deter state actors from using the badge of their authority to

---

[36]     *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[37]     *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003); *Burgos*, 14 F.3d at 790.

[38]     42 U.S.C. § 1983.

[39]     *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  *Accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[40]

Imposition of liability under section 1983 requires a defendant's direct involvement in the alleged constitutional violation.[41] "Thus, [a] supervisory official cannot be liable solely on account of the acts or omissions of his or her subordinates."[42] A plaintiff "cannot bring a section 1983 claim against [an individual] based solely on [his] supervisory capacity or the fact that [he] held high positions of authority."[43] "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."[44]

---

[40]    *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[41]    *See Iqbal*, 129 S. Ct. at 1948-49.

[42]    *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009).

[43]    *Thomas v. Coombe*, No. 95 Civ. 10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998). *Accord Wheat v. New York City Dep't of Corr.*, No. 10 Civ. 5459, 2010 WL 5129065, at *2 (S.D.N.Y. Dec. 15, 2010) ("Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

[44]    *Brooks v. Chappius*, 450 F. Supp. 2d 220, 225 (W.D.N.Y. Sept. 21, 2006) (quoting *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quotation marks omitted)). *Accord Colon* v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).

-11-

In 1995, the Second Circuit held that the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to respond to notices that unconstitutional acts were occurring.[45]  However, in 2009, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[46]  "Accordingly only the first and third *Colon* factors have survived the Supreme Court's decision in *Iqbal*."[47]

### C.   Deliberate Indifference to Serious Medical Needs

---

[45]     *See Colon,* 58 F.3d at 873.

[46]     *Iqbal*, 129 S. Ct. at 1948-49 (citations omitted) (explicitly rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").

[47]     *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment on prisoners.  In *Estelle v. Gamble*,[48] the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[49]   The Eighth Amendment charges prison officials with a duty to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] take reasonable measures to guarantee the safety of the inmates."[50]

"[A] prison official violates the Eighth Amendment only when two requirements are met."[51]   The two requirements include an objective prong and a subjective prong.  *First*, the alleged deprivation must be sufficiently serious in that it denies a prisoner "the minimal civilized

---

[48]     429 U.S. 97 (1976).

[49]     *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). *Accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ('To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . .") (quotation marks and citations omitted).

[50]     *Farmer*, 511 U.S. at 834.

[51]     *Id.* at 833.

-13-

measure of life's necessities."[52]   A sufficiently serious deprivation means an

objective "condition . . . that may produce death, degeneration or extreme

pain."[53]   *Second*, the official must act with a "sufficiently culpable state of

mind."[54]   That state of mind is a "deliberate indifference to [an] inmate's

health or safety."[55]   "[T]he subjective element of deliberate indifference

'entails something more than mere negligence . . . [but] something less than

acts or omissions for the very purpose of causing harm or with knowledge

that harm will result.'"[56]   Deliberate indifference requires that a prison

official "knows of and disregards an excessive risk to inmate health or

safety."[57]   Subjectively, the prison official "must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."[58]   Accordingly, recklessness

---

[52]   *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

[53]   *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quotation marks omitted).

[54]   *Farmer*, 511 U.S. at 834 (quotation marks and citations omitted).

[55]   *Id.* at 835.

[56]   *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at 835) (ellipsis and brackets in original).

[57]   *Farmer*, 511 U.S. at 837.

[58]   *Id.*

can satisfy the deliberate indifference standard where the official "knows
that inmates face a substantial risk of serious harm and disregards that risk
by failing to take reasonable measures to abate it."[59]

## IV.   DISCUSSION

### A.   Personal Involvement of Commissioner Fischer

Defendants argue that Fischer cannot be held liable for the
alleged violations based solely on his supervisory role as the DOCS'
Commissioner.  The Eleventh Amendment immunizes state agencies and
officials acting in their official capacity from suit under section 1983.[60]  The
Eleventh Amendment does not, however, bar suit against a State official in
his individual capacity.[61]   Therefore, the claims against Fischer and Heath
in their official capacities are dismissed pursuant to the Eleventh
Amendment.

Hobson does not allege that Fischer personally participated in
the denial of his grievances, but argues that Fischer knew or shuld have

---

[59]     *Id.* at 847.

[60]     *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989)
("[A] suit against a state official in his or her official capacity is not a suit against
the official but rather a suit against the official's office.  As such, it is no different
from a suit against the State itself.") (citations omitted).

[61]     *See Hafer v. Melo,* 502 U.S. 21, 22 (1991).

-15-

known, of the alleged constitutional violations as the Commissioner of

DOCS and the former Superintendent of Sing Sing.[62]  Hobson further claims

that Fischer knew of his "duties and obligations . . . to uphold the U.S.

Constitution and the laws of the State of New York as his oath of office

requires him to do.  There[fore] liability attaches since he acted outside the

scope of his lawful authority."[63]

Hobson does not elaborate as to how Fischer knew about the

alleged violations.  It appears that he expects this Court to infer that while

Fischer was the Superintendent, he must have observed and inspected the

areas of which Hobson complained.[64]  Nevertheless, Hobson has failed to

---

[62]     Plaintiff's Memorandum in Opposition to Defendants' Motion to
Dismiss ("Opp. Mem.") at 4.  I will consider the factual allegations contained in
plaintiff's opposition papers to the extent they are consistent with the allegations in
the Complaint.  "In general, a court may not look outside the pleadings when
reviewing a 12(b)(6) motion to dismiss.  However, the mandate to read the papers
of pro se litigants generously makes it appropriate to consider plaintiff's additional
materials, such as his opposition memorandum." *Burgess v. Goord*, No. 98 Civ.
2077, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999) (quotation marks and
citation omitted). *See also Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461
(N.D.N.Y. 2009) ("[T]he mandate to read the papers of pro se litigants generously
makes it appropriate to consider a plaintiff's papers in opposition to a defendant's
motion to dismiss as effectively amending the allegations of the plaintiff's
complaint, to the extent that those factual assertions are consistent with the
allegations of the plaintiff's complaint.") (citations omitted).

[63]     Opp. Mem. at 4.

[64]     *See id.*

show Fischer's personal involvement in any alleged constitutional violation. Accordingly, Fischer is dismissed from this lawsuit.[65]

### B.    Prison Conditions Imposing a Serious Health Risk

Hobson's Complaint alleges that the conditions of his confinement constituted cruel and unusual punishment under the Eighth Amendment.  Defendants argue that the prison conditions alleged in the Complaint did not violate Hobson's constitutional rights, nor did Hobson identify any injuries he suffered as a result of these conditions.

"Conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses."[66]  A medical condition is considered objectively serious if it is a condition of urgency that may result in death, degeneration or extreme pain.[67]  Hobson fails to show how he was actually harmed by the conditions alleged in his

---

[65]     Qualified immunity serves as an alternative ground to dismiss Hobson's claims against Fischer who did not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Alster v. Goord*, No. 05 Civ. 10883, 2010 WL 3835081, at *18 (S.D.N.Y. Sept. 10, 2010).

[66]     *Govan v. Campbell*, 289 F. Supp. 2d 289, 296-97 (N.D.N.Y., Oct. 29, 2003) (finding that shower stalls with rust bubbles, wild birds flying in the cells, and cockroach problems were not conditions rising to the level of a constitutional violation).

[67]     *See Hathaway*, 99 F.3d at 553.

-17-

Complaint.  For instance, Hobson filed a grievance about the broken lock on

the bathhouse window, asserting that "it poses a health risks for colds, flu,

etc."[68]  However, Hobson failed to allege that he was adversely affected by

the broken locks.  Similarly, in Hobson's original grievance to the IGRC,

he stated that the fans in the barber shop created respiratory ailments and

that the barber shop should have an exhaust system in it.[69]  Still, Hobson did

not claim that the barber shop ventilation personally affected him, nor did

he allege that he suffered from any respiratory problems.

While Hobson's Complaint fails to allege a serious health risk

caused or exacerbated by prison conditions, he provides a more detailed

account of his injuries in his opposition papers.  In those papers, he asserts

medical conditions that he now claims were caused by the alleged

violations.  Hobson states that he "suffers from COPD a respiratory disease

that he had no indication of prior to coming to Sing Sing."[70]  Additionally,

he has high blood pressure, and had a stent placed in his heart valve.[71]  At

---

[68]     Grievance # 47122-09.

[69]     *See* Grievance # 46409-09.

[70]     Opp. Mem. at 3. COPD stands for Chronic Obstructive Pulmonary
Disease.

[71]     *See id.*

-18-

the time he filed his opposition papers, Hobson also had "an infection in [his] left leg (purportedly, cellulitis) which was either caused by the surgery placing the stent or from a spider bite."[72]

Construed liberally in order to raise the strongest argument for the *pro se* litigant, plaintiff's history of COPD is sufficient to raise an objectively serious health risk. While Hobson has not provided health records or indication of the seriousness of his COPD, this Court will assume that plaintiff has sufficiently met the objective prong to raise an Eighth Amendment violation.

### C.   Deliberate Indifference by Heath

Defendants argue that even if the Complaint alleges an objectively serious health risk, plaintiff has failed to show Heath's deliberate indifference. Heath was on notice of plaintiff's allegations upon his receipt of Hobson's grievance through the IGRC.[73] Hobson also states in his opposition papers that he personally spoke with Heath about the alleged violations.[74] However, Hobson has failed to allege that Heath acted with the

---

[72]   *Id.*

[73]   *See* Compl. at 12.

[74]   Opp. Mem. at 5.

-19-

state of mind required to state an Eighth Amendment violation.  While Heath was aware of the prison conditions raised in the grievances, none of them gave rise to a substantial risk to Hobson's health.  Hobson's grievances to the IGRC and his subsequent appeals fail to mention any injury.  There is no evidence that Heath had any knowledge that Hobson suffered from COPD or any other illness.  Therefore, Heath was not aware that the conditions alleged by Hobson posed a substantial risk of serious harm.

In Heath's denial of Hobson's appeal from the IGRC, he listed the measures that were taken to remedy the grievances.  For instance, in responses to Hobson's complaint regarding bird feces, Heath pointed out that prison porters were cleaning up the bird feces on a daily basis.[75]  Heath also stated that the mess hall "is being operated in full compliance within department regulations", and that the "fans in the Barber Shop are used for exhaust only."[76]  With regard to the broken locks on the bathhouse windows, the IGRC attempted to fix the problem, and noted that it needed

---

[75]     *See* Decision of Superintendent.

[76]     *Id.*

further work.[77]   Heath addressed the concerns raised in the grievances.

Because he did not ignore the complaints brought to his attention as

Superintendent, Hobson cannot allege that Heath acted with deliberate

indifference.  Given that Hobson's grievances were investigated and

responded to, his claim of deliberate indifference fails.  Heath is therefore

dismissed from this lawsuit.

### D.    Leave to Amend the Complaint

Under Federal Rules of Civil Procedure 15(a), leave to amend a

complaint should be "freely given when justice so requires."[78]  A pro se

plaintiff should be permitted to amend his complaint prior to its dismissal

for failure to state a claim "unless the court can rule out any possibility,

however unlikely it might be, that an amended complaint would succeed in

stating a claim."[79]   Thus "it is well established that leave to amend a

complaint need not be granted when amendment would be futile."[80]

---

[77]    *See* IGRC Response to Grievance # 47122-09.

[78]    Fed.R.Civ.P. 15(a).

[79]    *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir.1999).

[80]    *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

Hobson cannot amend his Complaint to cure his claims against Fischer, due to Fischer's lack of personal involvement. The same holds true for Hobson's claims against Heath given the lack of deliberate indifference on Heath's part. As Hobson documented in his Complaint, his grievances were addressed through Sing Sing's grievance process. Because Heath was not on notice of Hobson's COPD, or any other ailment resulting from the alleged hazardous conditions, Hobson is unable to allege that Heath acted with the requisite state of mind. There is no additional information that was not already raised either in the Complaint of in Hobson's opposition papers that could cure this deficiency. Therefore, even if further documentation of Hobson's ailments were provided, he would still fail to meet the subjective prong required to show Heath's deliberate indifference.

Additionally, this Court has already taken into account plaintiff's opposition papers, which alleged injuries caused by the violations. Because this additional information proved insufficient to state a viable claim against the defendants, further amendment would be futile. Therefore, plaintiff's claims are dismissed with prejudice.

-22-

## V.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is

granted.   The Clerk of the Court is directed to close this motion (Docket No.

9) and this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
        March 14, 2011

**- Appearances -**

**Plaintiff (Pro Se):**

Henry Hobson
#93-A-6129
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

**For Defendants:**

Steven Neil Schulman
Assistant Attorney General
120 Broadway
New York, NY 10271
New York, NY 10271
(212) 416-8654